IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| OCEANA, INC. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-810 ESH |
| | ) | |
| CARLOS M. GUTIERREZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR CLARIFICATION

Federal Defendants respectfully move the Court to clarify its Memorandum Opinion in the above captioned matter for the reasons set forth in the Memorandum in Support of Federal Defendants' Motion for Clarification.  Intervenor Defendants do not oppose this motion. Plaintiffs have indicated that they will likely oppose this motion.

Dated: August 15, 2005.

KELLY JOHNSON
Acting Assistant Attorney General
United States Department of Justice
JEAN WILLIAMS, Chief

/s/Coby Howell
COBY HOWELL
Trial Attorney, WY Bar No. 6-3589
Wildlife and Marine Resources Section
Environment and Natural Resources Division
United States Department of Justice
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
Tel: (202) 353-7548 / Fax: (202) 305-0275

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OCEANA, INC. )<br><br> Plaintiff, )<br><br>v. )<br><br>CARLOS M. GUTIERREZ, et al., )<br><br> Defendants. ) | Civil Action No. 04-810 ESH |

## <u>MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS'</u><br><u>MOTION FOR CLARIFICATION</u>

On August 2, 2005, this Court granted summary judgment in favor of Federal Defendants

with two exceptions.  Order (Docket No. 73).  The Court found that the National Marine

Fisheries Service ("NMFS") had failed to establish a standardized bycatch reporting

methodology and impermissibly exercised its framework authority by harmonizing the

Amendment 10 essential fish habitat closures ("closures") with the Amendment 13 closures

when it implemented Framework 16.  <u>See</u> Memorandum Opinion at 87 (Docket No. 74).  This

motion for clarification involves the effect of the Court's latter finding on Framework 16.

Specifically, Federal Defendants request clarification on whether the Court's Order, which

vacated the Framework 16 closures, also re-instated or directed NMFS to re-promulgate the

Amendment 10 closure regulations.

### DISCUSSION

In the Memorandum Opinion ("opinion"), the Court severed and vacated the closures

promulgated in Framework 16 and stated that the "practical result of the Court's holding is that,

for the time being, both the habitat closures in Amendment 10 and the habitat closures in Amendment 13 will remain in place." Memorandum Opinion at 87. The Court's Order, however, denied Plaintiff's request for injunctive relief and was silent on whether NMFS must re-promulgate the relevant Amendment 10 regulations in order to effectively enforce those habitat closures. Order at 2. In the absence of injunctive relief, Federal Defendants respectfully move the Court for clarification because Circuit case law suggests that NMFS cannot automatically revert back to superseded regulations, but instead is left with a regulatory vacuum which it must fill through proper rulemaking procedures. See Small Refiner Lead Phase-Down Task Force v. EPA, 705 F.2d 506, 545 (D.C. Cir. 1983).

In Small Refiner Lead Phase-Down Task Force this Circuit recognized that, although there are limited circumstances when vacatur reinstates an old rule[1], "the better course is generally to vacate the new rule without reinstating the old rule." Id. The Court reasoned, "[t]his avoids any problem of the court overstepping its authority, and leaves it to the agency to craft the best replacement for its own rule." Id. For example, despite the fact that the court in Small Refiner Lead Phase-Down Task Force was faced with a situation where vacatur would leave EPA and the public without any limit on gasoline lead content for small refineries, the court chose to leave EPA with a "regulatory vacuum" that it could fill through either emergency or general rulemaking. Id. at 545-46. In essence, this Circuit's preference for what it referred to as a "general rule" was compelling enough that the court left the public with limited, if any,

---

[1] See id. (citing Natural Resources Defense Council, Inc. v. Gorsuch, 685 F.2d 718, 728 (D.C. Cir. 1982)); see also Action on Smoking and Health v. Civil Aeronautics Board, 713 F.2d 795, 797 (D.C. Cir. 1983) (vacatur reinstating the pre-existing rule when it was not contested by the other party).

protection against gasoline lead content in small refineries.  Id. at 545 and n.108 ("We think it appropriate to follow this general rule here.")

Based on NMFS' reading of the general rule, as set forth in Small Refiner Lead Phase-Down Task Force, it is the agency's understanding that vacatur results in a regulatory vacuum.[2] 705 F.2d at 545; see also Order at 2 (vacating only the Framework 16 habitat closures, but denying injunctive relief); Memorandum Opinion at 57 n.52 ("The fact that Framework 16 not only superceded Amendment 10's habitat closures, but replaced them with the Amendment 13 closures which have been validated by this Court, raises an issue as to whether plaintiff's claim might be moot, or alternatively precluded by *Oceana I*.").  Thus, it appears that NMFS must, at minimum, promulgate a notice in the Federal Register to effectively enforce these closures.  If, however, the Court's Order re-instates the Amendment 10 closures, as the courts did in Natural Resources Defense Council, 685 F.2d at 728 and Action on Smoking and Health, 713 F.2d at 797, then the closures would be considered implemented without further regulatory action from NMFS.  Therefore, NMFS respectfully requests clarification on whether, in addition to "vacat[ing] the portions of Framework 16 that modify the habitat closures established by Amendment 10," the Court's Order re-instates the Amendment 10 closures that were modified by Framework 16.

NMFS seeks this clarification for a number of reasons.  First, the agency potentially could be placed in the position of enforcing a regulation that arguably is no longer valid.  In fact,

---

[2] Unlike the regulatory vacuum in Small Refiner Lead Phase-Down Task Force, under the present circumstances, NMFS would maintain the prohibition on scallop vessels entering the Amendment 13 closure areas, thereby continuing to ensure the adequate protection of essential fish habitat.

during the last scallop Council meeting, questions were already raised as to whether NMFS could legitimately enforce the Amendment 10 closures.  Second, if NMFS was required to re-promulgate a regulation or issue a Federal Register notice, such action could subject NMFS to additional Administrative Procedure Act ("APA") and National Environmental Policy Act ("NEPA") challenges.  Although speculative at this point, in light of the highly litigious atmosphere surrounding New England fisheries, a renewed APA or NEPA challenge to any Federal Register notice attempting to re-establish the Amendment 10 closures is certainly within the realm of possibility, if not likely.[3/]  In light of these considerations, Federal Defendants seek clarification from the Court.

## CONCLUSION

Although it is NMFS' position that the Court's Order did not re-instate the Amendment 10 closures, nor provide injunctive relief directing NMFS to re-promulgate regulations, out of an abundance of caution, Federal Defendants seek clarification on whether the Court has ordered the agency to either re-instate or re-promulgate the Amendment 10 habitat closures.  For the

---

[3/] As a practical matter, there are several reasons for limiting the relief in the Order to only vacatur.  Re-instating or directing the agency to re-promulgate the Amendment 10 habitat closures will disrupt the current operation of this fishery.  As described in the Declaration of Patricia A. Kurkul ("Kurkul Decl."), re-instating the Amendment 10 closures would severely limit the fishable areas in Closed Area I where currently half of the scallop fishing effort is located.  Kurkul Decl. at ¶ 3.  Such dislocation would have many unanalyzed effects which will likely include negative economic impacts and a concentration of effort causing overharvesting of the scallop resource in the "open" portions of Closed Area I.  Id. at ¶ 3.  Re-instatement may also have the unintended long-term effect of reducing the attainment of optimum yield, id. at ¶ 4, and could delay subsequent analyses and framework actions necessary to the rotational management scheme for this fishery.  Id. at ¶ 5.  In light of the fact that the Court did not vacate this provision of Framework 16 on substantive grounds and the potential for significant disruption to the fishery, Federal Defendants do not believe re-instatement or directing NMFS to re-promulgate the Amendment 10 regulations is warranted under these circumstances.

foregoing reasons, Federal Defendants respectfully request that the Court clarify its August 2, 2005, Order.

Dated: August 15, 2005.

<div style="margin-left:40%">

KELLY JOHNSON
Acting Assistant Attorney General
United States Department of Justice
JEAN WILLIAMS, Chief

/s/ Coby Howell
COBY HOWELL
Trial Attorney, WY Bar No. 6-3589
Wildlife and Marine Resources Section
Environment and Natural Resources Division
United States Department of Justice
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
Tel: (202) 353-7548 / Fax: (202) 305-0275

Attorneys for Defendants

</div>

OF COUNSEL:
Gene Martin
Julie Williams
NOAA General Counsel
Gloucester, MA